# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOSEPH M. MALINOWSKI,

        Petitioner,

    v.                                     Case No. 05-C-176

JUDY P. SMITH,

        Respondent.

## DECISION AND ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS

## I.  PROCEDURAL AND FACTUAL BACKGROUND

On February 14, 2005, the petitioner in this habeas corpus action, Joseph M. Malinowski ("Malinowski"), who is a Wisconsin state prisoner confined at the Oshkosh Correctional Institution, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Previously, on  May 20, 2002, Malinowski was convicted in the Marathon County Circuit Court of second degree sexual assault of a child, in violation of Wis. Stat. § 948.02(2), and repeated sexual assault of the same child, in violation of Wis. Stat. § 948.025(1).  He was sentenced to serve a total term of six years' initial confinement, to be followed by sixteen years' extended supervision.   His conviction was affirmed by the Wisconsin Court of Appeals on August 26, 2003, and his petition for review was denied by the Wisconsin Supreme Court on November 17, 2003.

In its decision affirming Malinowski's judgment of conviction the court of appeals described the core facts supporting such conviction as follows:

> Samantha [Malinowski's stepdaughter and the alleged victim] alleged that Malinowski had repeated sexual contact with her over a period of approximately six

months. Her mother had witnessed some inappropriate behavior between them and took Samantha out of school to question her. At that time, Samantha denied any sexual activity. Several days later, her mother again became suspicious and crawled on her hands and knees behind a couch to observe their activity. She observed that her daughter's pants were open with pubic hairs showing and Malinowski fondling that area. She left the house and went to her brother's house and spoke with her sister-in-law, the victim's aunt. The aunt later spoke to Samantha and Samantha told her of numerous instances of sexual contact and intercourse with Malinowski.

(Answer, Ex. M at ¶ 2 (*State v. Malinowski*, No. 02-2577-CR, 2003 WL 22004996 (Wis. Ct. App. Aug. 26, 2003)) (hereinafter "Ct. App. Dec.").)

Prior to trial, Malinowski moved the court, pursuant to *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Wis. Ct. App. 1993) for an in camera review of the confidential school records of S.L., the alleged victim and Malinowski's stepdaughter. The court held a hearing with regard to Malinowski's motion. Malinowski attempted to elicit testimony from S.L.'s counselor, Tom Bosman, but the State objected on the grounds that Bosman was prohibited from testifying because his conversations with the alleged victim were privileged under Wis. Stat. § 905.04(2).[1] The court sustained the State's objection, and refused to allow Bosman to testify due to S.L.'s asserted privilege. Malinowski then presented testimony from S.L.'s mother, but was unable to persuade the court that the records he sought the court to review were material to a determination of guilt. Thus, the court refused to examine the confidential records.

_____

[1] That statutory section reads as follows: "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor."

2

Subsequently, Malinowski moved the court to reconsider its ruling. The court then held a second hearing on the proffered evidence. This time, the court determined that Malinowski had met the preliminary showing necessary to merit an *in camera* review of S.L.'s records. However, after reviewing the records the court concluded that the material in the records was not relevant to the case and would not be disclosed. The court also denied Malinowski's motion for the admission of evidence pertaining to certain behavior by S.L., a psychological evaluation of S.L, as well as Bosman's privileged testimony.

Malinowski then moved the court to stay the trial so that he might file an interlocutory appeal of the court's decision to refuse to allow into evidence the above-stated matters. The trial court granted Malinowski's motion and Malinowski sought to appeal the non-final order to the state court of appeals. However, the court of appeals denied Malinowski's petition to appeal the trial court's order.

Malinowski then proceeded to trial. As stated previously, on May 20, 2002, a jury convicted Malinowski of one court of second degree sexual assault of a child and one count of repeated sexual assault of the same child. Malinowski appealed his conviction to the Wisconsin Court of Appeals on the following four grounds: (1) the trial court erred in refusing to grant a mistrial when a juror spoke with S.L.'s father during a break in the proceedings; (2) the trial court erroneously admitted hearsay evidence; (3) the trial court erred in refusing to allow Bosman to testify regarding his opinion of S.L.'s credibility and regarding his opinion that S.L. had emotional difficulties that negatively impacted upon her ability to perceive and relate the truth; and (4) the trial court erred in refusing to allow evidence of S.L.'s specific acts. On August 26, 2003, in affirming Malinowski's judgment of conviction, the court of appeals found that Malinowski had shown no prejudice regarding the juror's

3

conversation; erroneous admission of the complained-of hearsay evidence was harmless; Bosman's opinions formed during counseling sessions with S.L. were privileged and, thus, the trial court properly excluded his testimony; and, the trial court correctly – under Wisconsin's Rape Shield statute, Wis. Stat. § 972.11(2) – prohibited Malinowski from introducing specific acts of S.L., and Malinowski failed to meet the standard to overcome the statute's exclusions.

Thereafter, Malinowski filed a petition for review with the Wisconsin Supreme Court. On November 17, 2003, the supreme court denied Malinowski's petition for review.

On February 14, 2005, Malinowski filed the instant federal habeas corpus petition. His petition raises only one ground in support of relief: that the trial court's decision to prohibit Bosman from testifying regarding his opinion of S.L.'s credibility and regarding his opinion that S.L. had emotional difficulties that negatively impacted upon her ability to perceive and relate the truth violated Malinowski's right to present a defense, which right is rooted in the Sixth Amendment's confrontation and compulsory process clauses, as well as in the Fifth and Fourteenth Amendments' guarantees of due process. The constitutional claim presented in Malinowksi's petition has now been fully briefed by the parties and is ready for resolution. For the reasons which follow, Malinowski's petition for a writ of habeas corpus will be denied and this action will be dismissed.

## II. DISCUSSION

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997). The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides, in pertinent part, that the federal courts may not grant habeas relief unless

4

the state court's judgment

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (quoting *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996)).

A decision is "contrary to" established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from the relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). However, in a habeas case, "[a] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [the Supreme Court's] opinions." *Mitchell v. Esparaza*, 540 U.S. 12, 16 (2003). A state court need not even be aware of Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*.

A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Harris v. Cotton*, 365 F.3d 552, 555

5

(7th Cir. 2004). However, a federal habeas court may not grant relief under the "unreasonable application" prong unless the state court's application of Supreme Court precedent "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

However, the restricted scope of review prescribed by the AEDPA does not apply to any federal constitutional claims which, although presented to the state court, were not adjudicated on the merits by the state court. Thus, if there is some question as to whether the claim was in fact decided on the merits by the state court, the reviewing habeas court must first determine whether the claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). If the state court did not adjudicate the merits of the claim, the provisions of § 2254 do not apply and the federal habeas court applies the general habeas standard set forth at 28 U.S.C. § 2243. *Braun v. Powell*, 227 F.3d 908, 916-17 (7th Cir. 2000). All that having been said, deciding whether a claim has been adjudicated on the merits by the state court involves first determining what it means to be "adjudicated on the merits" for purposes of § 2254(d).

In *Muth v. Frank*, 412 F.3d 808 (7th Cir. 2005) the Seventh Circuit Court of Appeals discussed what it means for a claim to have been adjudicated on the merits for purposes of § 2254(d).

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. In fact, several circuits have held that a state court need not offer *any* reasons and summarily dispose of a petitioner's claim and that summary disposition would be an adjudication on the merits.

An adjudication on the merits is perhaps best understood by stating what it is not: it is not the resolution of a claim on procedural grounds. *See Sellan,* 261 F.3d at 311 ("'Adjudicated on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."); *Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir. 2002) ("adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive as opposed to procedural"), *cert. denied,* 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003). It is only after a federal court has determined that a state court has adjudicated a claim on the merits that the correctness of the state court's decision is considered. Only then can a federal court consider a court's reasoning (assuming it has provided one, see above).

*Muth,* 412 F.3d at 815 (citations and footnotes omitted).

Turning to the decision of the court of appeals in Malinowski's case, the court set forth the issues presented for review in the first paragraph of its per curiam decision. In that regard, it stated *inter alia* as follows: "Malinowski argues that . . . (3) the trial court violated Malinowski's due process right to present a defense when it refused to allow him to question a school counselor regarding his opinion of Samantha's honesty and her reputation." (Ct. App. Dec. at ¶ 1.) Thus, the court identified Malinowski's claim as a constitutional claim. However, in rejecting the claim, the court of appeals made no mention of the constitution. Instead, the court made mention only of Wisconsin state law. More precisely, the court stated the following:

The trial court correctly ruled that the school counselor would not be allowed to testify to opinions he formed during counseling sessions. Opinions, perceptions and impressions gained during confidential communications are privileged. *Cf. **State v. Meeks**,* 2003 WI 104, ¶ 40, ___ Wis. 2d ___, ___ N.W. 2d ___ (relating to confidential communications with an attorney). The counselor testified that all of his information relevant to the case was based on his contact with Samantha in his capacity as a counselor. Her counseling sessions are privileged under WIS. STAT. § 905.04. *Id.* Malinowski also contends that the counselor could have testified to Samantha's reputation for honesty. Aspects of Malinowski's argument appear to suggest he sought the counselor's opinion on whether Samantha was telling the truth. That testimony would not be permissible. *See **State v. Haseltine**,* 120 Wis. 2d 92, 96, 352 N.W. 2d 673 (Ct. App. 1984). It also appears that he sought to disclose

7

specific acts of conduct, contrary to WIS. STAT. § 906.08(2). To the extent he merely wanted to show Samantha's reputation for honesty, other witnesses should have sufficed.

(Ct. App. Dec. at ¶ 6. (footnote omitted).)

Viewing the state court of appeals' decision in the context of the language of *Muth* leads inescapably to the conclusion that Malinowski's claim (in which he attacked the trial court's ruling that prevented him from questioning Bosman) was "adjudicated on the merits" by the state court. To be sure, the legal justification offered by the court of appeals for its rejection of the claim was based on Wisconsin state law, and not on the federal constitution. But, the court of appeals' description of the issues that were being presented to it makes clear that the court was well aware that Malinowski's claim was predicated, at least in part, on the due process clause.[2] And it is also abundantly clear that the court of appeals' "resolution of [the] claim [was not] on procedural grounds." *Muth*, 412 F.3d at 815. Such being the case, the AEDPA and the scope of review prescribed by that law are applicable to Malinowski's habeas petition.

The heart of Malinowski's argument is found at pages 10-11 of his initial brief:

---

[2] In his reply brief, Malinowski correctly cites *Muth* for the following proposition: "[A] petition is subject to AEDPA's standards of review only when a petitioner has had *his* claim reviewed by a state court. If a court considers another claim, it has not considered *his* claim." (Pet'r's Reply at 3 (citing *Muth*, 412 F.3d at 815 n.5).) However, the state appellate court did identify Malinowski's claim as one involving the due process clause. To be sure, it did not discuss due process in the course of explaining why it was rejecting his claim. But, that is of no consequence. As previously noted, in *Muth* the Seventh Circuit stated that

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. In fact, several circuits have held that a state court need not offer any reasons and summarily dispose of a petitioner's claim and that summary disposition would be an adjudication of the merits.

*Muth*, 412 F.3d at 815 (footnote omitted).

A defendant's right to testify, present witnesses in his own defense, and to cross-examine witnesses against him – often collectively referred to as the right to present a defense – is rooted in the Sixth Amendment's confrontation and compulsory process clauses and the Fifth and Fourteenth Amendments' guarantee of due process. *See Rock v. Arkansas*, 483 U.S. 44, 51-52 (1977).

While the admission of evidence generally rests within the sound exercise of trial court discretion and may be subject to reasonable restrictions, *United States v. Scheffer*, 523 U.S. 303, 308 (1998), such limitations may deny the defendant his rights to due process, compulsory process, and confrontation where, as in this case, they have the effect of concealing relevant, exculpatory evidence from the jury. *See Delaware v. Van Arsdall*, 475 U.S. 673 (1986). . . .

A defendant's right to present a defense includes the right to offer testimony by witnesses and to compel their attendance. *Chambers v. Mississippi*, 410 U.S. 284 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967). The Supreme Court has recognized that "few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers*, 410 U.S. at 302.

At the same time, a defendant's right to present relevant testimony is not without limitation and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers*, 410 U.S. at 295; *Rock*, 483 U.S. at 55. Still, while "state and federal rulemakers have broad latitude under the Constitution to establish rules and excluding evidence from criminal trials," *Scheffer*, 523 U.S. at 308, the Supreme Court has expressed disapproval of rules "applied mechanistically to defeat the ends of justice," *Rock*, 483 U.S. at 55. Accordingly, such rules violate the right to present a defense if their application in a particular case is "arbitrary" or "disproportionate to the purposes they are designed to serve." *Rock*, 483 U.S. at 56.

Evidentiary privileges constitute one type of general rule which may contravene the right to present a defense n a particular case. *See, e.g., United States v. Rainone*, 32 F.3d 1203, 1206 (7th Cir. 1994):

> Evidentiary privileges are not absolute, however. Even privileges recognized when the Constitution was written can be trumped by constitutional rights, such as the right of confrontation conferred by the Sixth Amendment and interpreted to include the right of cross-examination. [Citations omitted]. Even the attorney-client privilege, therefore, hallowed as it is, yet not found in the Constitution, might have to yield in a particular case if the right of confrontation, whether is its aspect as the right of cross-examination or in some other aspect, would be violated by enforcing the privilege.

9

> *See also Davis v. Alaska,* 415 U.S. 308 (1974) (state rule barring inquiry into fact prosecution witness was on juvenile probation violates right to confrontation).
>
> Evidentiary privileges are not based on any concerns about the reliability of the excluded evidence and in[s]tead "are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974) (footnote omitted).

(Pet'r's Br. at 10-11.)

Throughout his initial brief and well into his reply brief Malinowski's argument is predicated on the proposition (which has now been rejected by this court) that the AEDPA does not apply to his petition. Commencing at page 11 of his reply brief, however, Malinowski tailors his argument on the assumption that the AEDPA is applicable to his petition. In doing so, he cites *Rock v. Arkansas*, *Davis v. Alaska*, *Chambers v. Mississippi*, and *Washington v. Texas*, and argues that the state court's decision in his case was contrary to, and an unreasonable application of, such Supreme Court precedent.

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution to be confronted by the witnesses against him. U.S. Const. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 315 (1974). The purpose of the confrontation clause is

> to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.

*Davis*, 415 U.S. at 315-16 (quoting 5 J. Wigmore, Evidence § 1395 p. 123 (3d ed. 1940)). Yet, "trial judges retain wide latitude insofar as the confrontation clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally

relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Indeed, evidentiary protections based on legitimate state interests may curtail the right to cross-examine without violating the confrontation clause. *Davis*, 415 U.S. 318-20. At the same time, however, the policy behind finding a confrontation clause violation over the state evidentiary exclusions relies on the desire to "assure 'the accuracy of the truth-determining process.'" *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (quoting *Dutton v. Evans,* 400 U.S. 74, 89 (1970)).

Moreover, "[t]he right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights." *Washington v. Texas*, 388 U.S. 14, 18 (1967). Indeed, in *Washington* the court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's duty to the jury so that it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id*. at 19.

As previously stated, in support of his claim Malinowski relies on the Supreme Court's decisions in *Rock*, *Davis*, *Chambers*, and *Washington*. Thus, an examination of the facts in each of those cases is necessary to first determine whether the state court proceeding resulted in a decision that was contrary to clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). Again, a decision is "contrary to" established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from the relevant Supreme Court precedent and arrives at a result opposite" to that

reached by the Supreme Court. *Williams*, 529 U.S. at 405.

In *Rock*, the defendant was charged with, and convicted of, manslaughter for the shooting of her husband. Shortly after the shooting, she made a statement to one of the investigating officers regarding the events that had led to the shooting. Subsequently, she underwent hypnosis in an attempt to refresh her memory regarding the events that led up the the shooting. When the prosecutor learned of the hypnosis sessions, he filed a motion to exclude the petitioner's testimony. The trial judge held a pretrial hearing on the motion and concluded that no hypnotically refreshed testimony would be admitted. The court issued an order limiting the defendant's testimony to matters remembered and stated to the examiner prior to being placed under hypnosis. *Rock v. Arkansas*, 483 U.S. 44, 47 (1987).

The Supreme Court framed the issue in *Rock* as follows: "The question now before the court is whether a criminal defendant's right to testify may be restricted by a state rule that excludes her posthypnosis testimony." *Rock*, 483 U.S. at 53. In reaching the conclusion that the Arkansas state rule, which prohibited the defendant from being allowed to testify about her posthypnosis "memory" of the events which led to the shooting of her husband, violated the defendant's right to due process and violated her Sixth and Fourteenth Amendment "right to call 'witnesses in [her] favor.'" *Id*. at 52 (quoting *Washington*, 388 U.S. at 17-19).

In reaching its ruling the Supreme Court stated the following:

> We are not prepared to endorse without qualifications the use of hypnosis as an investigative tool; scientific understanding of the phenomenon and of the means to control the effects of hypnosis is still in its infancy. Arkansas, however, has not justified the exclusion of *all* of a defendant's testimony that the defendant is unable to prove to be the product of prehypnosis memory. A State's legitimate interest in barring unreliable evidence does not extend to *per se* exclusions that may be reliable in an individual case. Wholesale inadmissibility of a defendant's testimony is an

12

arbitrary restriction on the right to testify in the absence of clear evidence by the State repudiating the validity of all posthypnosis recollections. The State would be well within its powers if it established guidelines to aid trial courts in the evaluation of posthypnosis testimony and it may be able to show that testimony in a particular case is so unreliable that exclusion is justified. But it has not shown that hypnotically enhanced testimony is always so untrustworthy and so immune to the traditional means of evaluating credibility that it should disable a defendant from presenting her version of the events for which she is on trial.

. . . Arkansas' *per se* rule excluding all posthypnosis testimony infringes impermissibly on the right of a defendant to testify on his own behalf.

*Id*. at 61-62.

The case at bar did not involve the defendant being absolutely prohibited from testifying about events his memory of which was allegedly induced by hypnosis. Indeed, Malinowski did not testify at all during his trial. Such being the case, the facts in the instant case are not "materially indistinguishable" from the facts in *Rock*. Accordingly, the decision of the Wisconsin state court in this case was not contrary to clearly established federal law, as determined by the Supreme Court in *Rock*.

*Chambers* is a fact-based decision. *See Dunlap v. Hepp*, 436 F.3d 739, 742 (7th Cir. 2006). In *Chambers* the defendant was convicted after jury trial of shooting a police officer. *Chambers*, 410 U.S. at 285. At trial the defendant was denied the opportunity to examine one Gable McDonald as an adverse witness. McDonald previously confessed to shooting the officer and then repudiated the confession. The defendant also was denied the opportunity to cross-examine certain witnesses concerning their first-hand knowledge of the inculpatory out-of-court statements of McDonald. Specifically, McDonald had told those witnesses that he had shot the victim police officer. *Id.* at 291-92.

The state trial court prohibited the defendant from examining McDonald as an adverse

13

witness on the grounds that his testimony was not adverse to Chambers, i.e., he did not accuse Chambers of the murder. *Id.* at 297-298. Chambers' "request to cross-examine McDonald was denied on the basis of a Mississippi common-law rule that a party may not impeach his own witness." *Id.* at 295. Furthermore, the state trial court prohibited the defendant from introducing McDonald's out-of-court statements on grounds of hearsay. *Id.* at 298.

In reversing Chambers' conviction, the Supreme Court held:

> We conclude that the exclusion of this critical evidence [the witnesses' testimony of McDonald's inculpatory statements], coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.

*Chambers*, 410 U.S. at 302-03.

The facts in the case at bar do not bear any material resemblance to the facts in *Chambers*. This is not a situation where it is claimed that the victim gave a statement to a third party, in which statement she exonerated Malinowski. Instead, Malinowski was in essence denied the opportunity to ask the victim's school counselor his opinion regarding her credibility. Because the facts in the instant case are not "materially indistinguishable" from the facts in *Chambers*, it follows that the decision of the Wisconsin state court in the case at bar was not contrary to clearly established federal law, as determined by the Supreme Court in *Chambers.*

Like *Chambers*, *Davis* is a fact-based decision. *Dunlap,* 436 F.3d at 742. In *Davis*, the trial court did not allow the defendant "to impeach the credibility of a prosecution witness by cross-examination directed at possible bias deriving from the witness' probationary status as a juvenile

14

delinquent when such an impeachment would conflict with [the] State's asserted interest in preserving the confidentiality of juvenile adjudications of delinquency." *Davis*, 415 U.S. at 309. The witness testified that he was unconcerned over possible police suspicion that he might be involved in the burglary with which the defendant was charged, and he categorically denied ever having been the subject of any similar law-enforcement interrogation. *Id.* at 311. This line of testimony went unchallenged because the trial court would not allow the defendant to bring out the fact that the witness had been adjudged a juvenile delinquent stemming from burglarizing two cabins. The Supreme Court held that, in essence, the witness was shielded from giving truthful testimony by the trial court's ruling that he could not be impeached by his prior delinquency finding. *Id.* at 320. The court stated:

> The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected [the witness] from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records.

*Id.*

The case at bar did not involve an order by the trial court that the defendant not be allowed to bring out on cross-examination a witness's prior delinquency adjudication (or any other similar information), when such information was clearly relevant to the witness's credibility. In other words, once again the facts in the case at bar are not "materially indistinguishable" from the facts in *Davis*. Such being the case, the decision of the Wisconsin state court in the case at bar was likewise not contrary to clearly established federal law, as determined by the Supreme Court in *Davis*.

The final case upon which Malinowski relies is *Washington v. Texas*. In *Washington*, the

15

defendant, Jackie Washington, was prohibited by Texas state law from calling an accomplice as a

defense witness.  The Supreme Court held that, by application of the Texas rule prohibiting an

alleged accomplice from testifying on behalf of a defendant, Jackie Washington

> was denied his right to have compulsory process for obtaining witnesses in his favor
> because the State arbitrarily denied him the right to put on the stand a witness who
> was physically and mentally capable of testifying to events that he had personally
> observed, and whose testimony would have been relevant and material to the defense.

*Washington*, 388 U.S. at 23.  Once again, the facts in the instant case are not "materially

indistinguishable" from the facts in *Washington*.  Simply stated, the witness from whom Malinowski

sought to obtain opinion testimony was not his accomplice and there was no state law absolutely

prohibiting his doing so.  Thus, the decision of the Wisconsin state court in Malinowski's case was

not contrary to clearly established federal law, as determined by the Supreme Court in *Washington.*

But was the Wisconsin court's decision in the instant case an "unreasonable application" of

United States Supreme Court precedent?  In other words, although the state court may have identified

the correct rule, did that court apply it unreasonably to the facts?

To begin, the relevant decision for purposes of this court's assessment is the decision of the

last state court to rule on the merits of the petitioner's claim.  *Charlton v. Davis*, 439 F.3d 369, 374

(7th Cir. 2006).  As Malinowski notes, the Wisconsin court of appeals' decision does not mention

any of the afore-mentioned U.S. Supreme Court cases.  Instead, the basis for the court of appeals'

rejection of Malinowski's claim regarding his not being allowed to question Bosman was Wis. Stat.

§ 905.04, to wit, the statute governing the counselor-patient privilege.  Significantly, however, prior

to barring certain questions being asked of Bosman, the trial court conducted an *in camera* review

of S.L.'s school records pursuant to *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Wis. Ct.

16

App. 1993). Before deciding to review such records, the trial court needed to be persuaded preliminarily that such records contained information that "[was] relevant and [might] be helpful to the defense or [was] necessary to a fair determination of guilt or innocence." *Shiffra*, 175 Wis.2d at 608, 499 N.W.2d at 723.[3] It was only after a review of such records that the trial court issued its ruling prohibiting Malinowski from eliciting certain information from Bosman, to wit, Bosman's opinion regarding S.L.'s credibility, which would have been based on his counseling of S.L. Furthermore, it was only after reviewing the records *in camera* that the trial court issued its written order of July 23, 2001. The text of that order reads as follows:

> The D.C. Everest School District, having produced the school records of Samantha LaBarge, DOB: 8/7/86, for an In-Camera Inspection by the Court; and the Court, having conducted an In-Camera Inspection of said records; and
>
> The Court having determined that none of the records produced by the D.C. Everest School District contain evidence relevant to the defense or that have any independent probative value,
>
> IT IS HEREBY ORDERED AS FOLLOWS:
>
> > 1. None of the records produced by the D.C. Everest School District shall be turned over to the defense for use in trial of this matter; and
> >
> > 2. All of the records produced by the D.C. Everest School District shall be sealed and maintained by the Clerk of Courts in the file of this matter and said file shall not be released to any person without

---

[3] *Shiffra* was decided in 1993, and was therefore the Wisconsin case law upon which the parties and the trial court relied in addressing Malinowski's entitlement to a hearing on his request for S.L.'s counseling records. Subsequently, in *State v. Green*, 253 Wis.2d 356, 646 N.W.2d 298 (Wis. 2002), the Wisconsin Supreme Court stated that "a slightly higher standard is required before the court must conduct an in camera review of privileged counseling records. For this reason, we conclude, consistent with other state standards, that a defendant must show a 'reasonable likelihood' that the records will be necessary to a determination of guilt or innocence." *Green*, 253 Wis.2d at 379, 646 N.W.2d at 309. Such being the case, Malinowski's request for an *in camera* review of S.L.'s counseling records benefitted from the lesser standard imposed by *Shiffra*.

17

written order of the Court.

(Answer, Ex. G, App. G.)  That the trial court reviewed S.L's school records before issuing its ruling, and in doing so expressly recognized its obligations under *Shiffra*, is a significant consideration in this federal habeas proceeding.  This is because the court of appeals' decision in *Shiffra* was expressly predicated on that court's recognition of a defendant's constitutional right to present a defense, even if allowing him to present such defense might mean that state rules of privilege would have to yield.  The *Shiffra* court stated as follows:

> We must first decide whether Shiffra is entitled to an *in camera* review of Pamela's past psychiatric and mental health treatment records.  This question implicates Shiffra's constitutional right to due process of law. . . .

> Under the due process clause, criminal defendants must be given a meaningful opportunity to present a complete defense.  A defendant's right to discover exculpatory evidence does not include the authority to search the state's entire file.  Rather, an *in camera* review of evidence achieves the proper balance between the defendant's rights and the state's interests in protection of its citizens.

> . . . .

> We conclude that Shiffra has met the burden of making a preliminary showing of materiality.  He presented ample evidence during the hearing on his discovery motion that Pamela's psychiatric difficulties might affect both her ability to accurately perceive events and her ability to relate the truth.  These difficulties are relevant because they directly affect Pamela's credibility.  They also bear directly on Shiffra's defense of consent.  Shiffra is entitled to an *in camera* inspection of the records.

*Shiffra*, 175 Wis.2d at 605, 612, 499 N.W.2d at 721, 724 (citations and footnotes omitted).

When considering whether the Wisconsin Court of Appeals' decision "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d),  I find it critical that the trial court (whose decision was affirmed by the court of appeals) issued its ruling *only after* it had reviewed S.L.'s school records *in*

18

*camera*.  In recognizing that Malinowski had made a sufficient showing under *Shiffra* to warrant

such a review, the trial court was likewise recognizing that the confidentiality of such records could

be required to yield to Malinowski's constitutional right to present a defense.  *See Dunlap v. Hepp*,

436 F.3d 739, 745 (7th Cir. 2006) ("[W]e cannot find that the Wisconsin Supreme Court decision

is an unreasonable application of established law as set out by the U.S. Supreme Court in *Chambers*

or *Davis*.  A highly significant factor is that the Wisconsin court recognized that its rape shield law

must yield if it would deprive a defendant of his constitutional rights.").

The decisions of the U.S. Supreme Court do not require that materials such as confidential

school records must always be disclosed.  It is only when declining to do so would infringe on a

defendant's constitutional rights that disclosure must occur.  Indeed, in *Dunlap v. Hepp*, the Seventh

Circuit had the following to say in a habeas case in which the petitioner argued that he was deprived

of his Sixth Amendment right to confront witnesses and present a defense by the state trial court's

application of the Wisconsin rape shield law, Wis. Stat. § 972.11(2).

> [S]ince 1996, consistent with AEDPA, our opinions give far greater deference to the
> state courts.  *See Hammer v. Karlen*, 342 F.3d 807 (7th Cir. 2003); *Pack v. Page*, 147
> F.3d 586 (7th Cir. 1998). In *Hammer*, the state court determined that the evidence
> Hammer wished to present was not highly relevant and that his interest in presenting
> it was outweighed by the State's interest in protecting the privacy of sexual assault
> victims under Wisconsin's rape shield law.  Citing *Hennon v. Cooper*, 109 F.3d 330,
> 334 (7th Cir. 1997), we said that for a petitioner to obtain relief, "the state court must
> not only have reached an incorrect result, but a truly 'unreasonable' one. . . . Thus,
> if the state court's decision is 'at least minimally consistent with the facts and
> circumstances of the case,' the federal court is powerless to grant relief."  *Hammer*,
> at 810.  *In Pack, the Illinois Appellate Court had also applied a balancing approach
> under which the trial judge had discretion to weigh the competing interests of the
> parties under the Illinois statute.  We said that when federal constitutional law calls
> for the exercise of discretion, if a petitioner has a full opportunity to litigate the issue,
> a responsible, thoughtful decision is adequate to support the judgment.*  We also
> noted that the fact that we might not have reached the same result were we
> considering the case on direct appeal "is beside the point."  At 589.

19

*Dunlap*, 436 F.3dThose records at 744-45. (emphasis added.); *see also Pack v. Page*, 147 F.3d 586, 589 (7th Cir. 1998) (the Constitution is satisfied if the state court gives "earnest consideration to the possibility that excluding evidence under the rape shield law may interfere with the defendant's opportunity to present a defense of innocence.").

The bottom line is that the Wisconsin state trial court reviewed S.L's school records to determine whether they contained "evidence relevant to the defense or [had] any independent probative value." The trial court found that they did not. Moreover, on May 31, 2006, this court issued an order that the respondent produce for this court's *in camera* inspection S.L's school records that had been produced for the state trial court's review. In accordance with the May 31, 2006 order, those records were produced and this court has now independently reviewed them. Having done so, this court finds the state trial court's determination that such records did not contain evidence relevant to the defense or having any independent probative value, was neither (1) a decision that was contrary to, or involved an unreasonable application, clearly established Federal law, as determined by the Supreme Court of the United States, nor (2) a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d)(1) and (2). Simply stated, nothing in the school records is even remotely close to the evidence involved in the Supreme Court cases discussed above, such that the Wisconsin courts "unreasonably refuse[d]" to extend those precedents to Malinowski's case. *See Williams v. Taylor*, 529 U.S. 362, 407 (2000).

The state court record also reveals that the trial court gave consideration to Malinowski's request to allow Bosman to testify regarding his opinion of S.L's credibility, which was predicated on his role as S.L's counselor, before issuing a written ruling on September 13, 2001, that he would

20

not be allowed to do so.  (See Order found at Answer, Ex. G, App. K.[4])  Whether this court would

have ruled differently (had it been the trial court) is of no matter.  The fact remains that Malinowski

had a "full opportunity to litigate the issue,"  the trial court issued a "thoughtful decision," and the

court of appeals affirmed that decision.  *Dunlap*, 436 F.3d at 745.  In light of the foregoing, I cannot

say that the state court decision "involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d).  Simply stated,

the state court's decision was at least minimally consistent with the facts and circumstances of the

case.  See *Danks v. Davis*, 355 F.3d 1005, 1008 (7th Cir. 2004); see also *Wiggins v. Smith*, 539 U.S.

510, 520-21 (2003) (in order for habeas relief to be granted, the state court's  decision must be "more

than incorrect or erroneous," it must be "objectively unreasonable."); *United States ex rel. Bell v.*

*Pierson*, 267 F.3d 544, 557 (7th Cir. 2001) ("If . . .  the case falls under the 'unreasonable

---

[4] During the motion hearing conducted on September 7, 2001, the trial court stated, *inter alia*, as follows:

> Next, with the idea that Mr. Bosman is going to testify, he – I have previously ruled that there was – that the victim through her mother had claimed privilege that he was a counselor and that anything that he may know as a result of being a counselor is not properly admitted.
> And I believe he advised the court that he did not have any knowledge of the facts of this case independent of his role s her school counselor.
> I also wish to point out that the jury is the trier of the truth in this case, and that no witness, expert or otherwise, is permitted to give an opinion as to whether or not the victim is telling the truth by means of expert testimony.
> With regard to the requested psychological evaluation by Dr. Galli, there is no competent evidence before this court that the victim has ever had any physical or mental disorder that might affect her disability or affect her credibility.  I've reviewed the school records; I don't find evidence in there.  There's no testimony that she ever had any psychological problem, there's no evidence that she has ever falsely reported a sexual assault, and I don't believe a proper basis has been presented for me to order her to have a psychological evaluation, and so that request is also denied.

(Answer, Ex. G, App. J at 16-17.)

application' clause, then we defer to a reasonable state court decision.").

In conclusion, and for all of the reasons set forth above, Malinowski's petition for a writ of habeas corpus will be denied. In the end, he has failed to demonstrate that the state court proceeding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d).

**NOW THEREFORE IT IS ORDERED** that petitioner Malinowski's petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**SO ORDERED** this <u>30th</u> day of June 2006, at Milwaukee, Wisconsin.

<u>/s/ William E. Callahan, Jr.</u>
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

Case 2:05-cv-00176-WEC   Filed 06/30/06   Page 22 of 22   Document 19